[L. A. No. 2885. In Bank.—April 30, 1912.]

## LOUISE S. BRADBURY, Respondent, v. AUGUSTUS B. HIGGINSON, Appellant.

LANDLORD AND TENANT—REPUDIATION OF LEASE BY TENANTS—REMEDIES OF LANDLORD—ACTION FOR RENT—MEASURE OF DAMAGES FOR BREACH.—Where a lease is repudiated by the tenant and the premises abandoned, the landlord may pursue one of two courses: he may rest upon his contract and sue his tenant as each installment of rent, or the whole thereof, becomes due, or, he may take possession of the premises and recover damages, which damages will be the difference between what he may be able to rent the premises for and the price agreed to be paid under the lease. Where he sues for damages, he cannot in advance recover the full price to be paid for the unexpired term, but the amount of his recovery is limited as above indicated.

ID.—LEASE OF "APPURTENANCES" TO DWELLING-HOUSE—WATER-SUPPLY SYSTEM—LANDLORD NOT OBLIGATED TO REPAIR.—Under a written lease of a dwelling-house and grounds "with the appurtenances," the tenant would have the right to the use of water that was being supplied to the premises from a water system owned or maintained by the landlord, but under the term "appurtenances" there could not be implied an agreement on the part of the landlord to keep in repair the water system or the pipes leading to the leased premises. An obligation on the part of the landlord to make such repairs cannot be imported into the terms of the lease under a parol agreement to that effect.

ID.—LIABILITY FOR RENT WHEN TENANT ABANDONS PREMISES.—The general common-law rule is that rent, as such, is not payable until it falls due under the lease, and this rule is not altered by the fact that the tenant has abandoned the premises and notified the landlord that he will abandon the lease.

ID.—ACTION FOR DAMAGES FOR ABANDONMENT—ALLEGATION OF DAMAGES—PRAYER FOR JUDGMENT.—A complaint in an action by the

landlord to recover damages for an alleged abandonment by the tenant, in a sum amounting to the aggregate rent for the unexpired term, is insufficient, in the absence of an allegation of the amount of damages suffered by reason of the tenant's repudiation, or any facts from which the amount of such damage may be inferred. A mere prayer for judgment in such amount is not the equivalent of an allegation of the damage suffered.

ID.—NON-PAYMENT OF RENT DUE FOR UNEXPIRED TERM.—In such an action for damages, allegations showing the non-payment of rent due for a part of the expired term, do not warrant a judgment for the landlord in that sum, in the absence of an allegation that the premises could not have been rented, during the rest of the term, for an amount equal to that provided by the lease.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellant.

Canfield & Starbuck, and Grant Jackson, *Amicus Curiæ*, for Respondent.

SLOSS, J.—Upon an appeal from a judgment in favor of plaintiff, the district court of appeal for the second appellate district reversed the judgment. An opinion prepared by James, J., was filed, Shaw, J., concurring, and Allen, P. J., merely concurring in the judgment of reversal. Two main propositions were considered in the opinion, the conclusion of Mr. Justice James being favorable to the appellant on one of these, and in support of the respondent's contentions on the other. Both parties were dissatisfied, and each filed a petition to have the cause transferred to and heard in this court. An order of transfer was made.

The opinion of Mr. Justice James reads as follows: —

"Plaintiff brought this action to recover the sum of six hundred dollars from defendant. It is alleged in the complaint that defendant on December 13, 1904, leased from plaintiff the house and premises known as 'Eagle's Nest' at Montecito in Santa Barbara County, for the term of five years, at a monthly rental of one hundred dollars, which was payable on the first day of each month in advance. It was alleged further that pursuant to the terms of the lease the

defendant paid the rental as it became due for each month up to and including the month of June, 1909; that the rental which became due on July 1, 1909, and August 1, 1909, was not paid; that on August 17, 1909, the defendant repudiated the contract of lease and refused thereafter to be bound by the terms thereof. A prayer for judgment in the sum of six hundred dollars then followed. The complaint was filed on August 19, 1909. An amended answer was filed by defendant to which a demurrer was interposed by plaintiff. This demurrer was sustained without leave to amend, and judgment was entered in favor of plaintiff for the amount prayed for and costs of suit.

"Upon this appeal, taken by defendant, the ruling of the trial court in sustaining the demurrer to the amended answer and the sufficiency of the complaint to support the judgment are the questions to be considered. They will be taken up in inverse order. It will be noticed that the term of hiring of the real property in question extended for four months after the date of the commencement of plaintiff's action. There was contained in plaintiff's complaint no statement that the premises had been abandoned by her lessee or of how she had been damaged by the alleged repudiation of the contract by defendant, other than that the rental becoming due on July 1 and August 1, 1909, remained unpaid. It is claimed by plaintiff that immediately upon the repudiation of the lease contract by defendant, a cause of action for damages arose in her favor, and she might at once sue for the full amount which would become due had the contract run its full term and recover it as damages. That a landlord may have an action for damages for breach of contract when a tenant abandons his lease is not questioned by any of the authorities. His damages, however, in that event, are to be ascertained in a particular way. Where a lease is repudiated and the premises abandoned, the landlord may pursue one of two courses: He may rest upon his contract and sue his tenant as each installment of rent, or the whole thereof, becomes due; or, he may take possession of the premises and recover damages, which damages will be the difference between what he may be able to rent the premises for and the price agreed to be paid under the lease. Where he sues for damages, he cannot in advance recover the full price to be paid for the unexpired term, but the amount of his

recovery is limited as just indicated. (*In re Bell,* 85 Cal. 119, [24 Pac. 633]; *Respini* v. *Porta,* 89 Cal. 464, [23 Am. St. Rep. 488, 26 Pac. 967]; *Massie* v. *State Natl. Bank,* 11 Tex. Civ. App. 280, [32 S. W. 797]; Jones on Landlord & Tenant, sec. 140.) It is said by Mr. Gear in his work on Landlord & Tenant: 'If the premises are abandoned without cause, the landlord may elect to leave them vacant and recover rent, or enter and determine the tenancy; but he cannot both enter and treat the contract as subsisting. . . . Under the Roman civil law and in Louisiana, the tenant who abandons during the term may be sued at once for the whole rent of the term.' From the decision in the case of *Respini* v. *Porta,* 89 Cal. 464, [23 Am. St. Rep. 488, 26 Pac. 967], we quote: 'But we cannot support him in his contention that because the defendant, against his (plaintiff's) wishes and without right, abandoned the property, he is entitled to recover the full amount provided for by the terms of the lease to defendant. Our code provides that "for the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom." (Civ. Code, sec. 3300.) . . . In cases of this kind the landlord is not entitled to recover for *rent* of the premises after the abandonment of them by the defendant, but has compensation for the injury, and his measure of damage is the difference between the rent he was to receive and the rent actually received from the subsequent tenant, provided there has been good faith in the subsequent letting.' (Citing cases.)

"It is not claimed by respondent that the action should be viewed as one for the collection of installments of rent under the lease, but it is insisted that it should be considered as one for damages resting upon a claimed abandonment made by the lessee. Respondent's position is that the lease was terminated by the alleged act of appellant, her lessee, in repudiating the contract and refusing to be bound further thereunder. The complaint is lacking in essential allegations entitling the plaintiff to judgment in the superior court for such damages as she may have suffered, and does not therefore properly state a cause of action of which such court had any jurisdiction.

"We have next to consider whether or not the amended answer filed on the part of defendant was sufficient as against the demurrer interposed to it. The lease under which the property was held was in the ordinary form and contained the statement that the plaintiff leased to defendant 'the house known as "Eagle's Nest" at Las Tunas in the Montecito in the county of Santa Barbara, state of California, together with the grounds immediately around said house *with the appurtenances.'* In the amended answer, the abandonment of the premises on the 17th day of August, 1909, was admitted, and as excuse and cause therefor defendant alleged, that included within the terms of the lease by way of oral agreement and mutual understanding of the parties at the time the contract was entered into, was the agreement of the plaintiff to supply the premises leased with water for domestic purposes from a water system and plant maintained by and under the control of plaintiff, and that the furnishing of such water was the principal consideration for the rental stipulated to be paid. It was then alleged that the water was so furnished, except that for the months of July and August plaintiff neglected and refused to furnish the same, although notified by defendant so to do, and that defendant vacated the premises and abandoned the lease because of the failure of plaintiff to fulfill her part of the contract in this respect. Nothing was stated in the lease indicating that there was any obligation on the part of plaintiff to supply the premises with water. It is the contention of defendant, however, that as the water was being supplied at the time of the hiring of the real property in question, he should be permitted to show the agreement of the parties in that particular, even though orally expressed. He contends that the furnishing of water was an appurtenance within the meaning of that term as used in the lease contract. Unless proof of the alleged oral agreement of the parties is permitted to be made by way of explaining what was appurtenant to the premises leased, such proof is not competent otherwise, because it would add to the conditions and obligations of the parties as expressed in their written contract. Section 662 of the Civil Code defines an appurtenance as follows: 'A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or

heat from or across the land of another.' Under his lease contract defendant undoubtedly had the right to use those things, and continue to use them during the term of the hiring, which were necessary to or attached to the real property at the time the contract was made. If water was being supplied to the premises from a water system owned or maintained by the plaintiff, the right to the use of the water so supplied would be one which would naturally, and perhaps necessarily, appertain to the leasehold estate. This right, however, in the absence of an express term of the written contract further defining it, would be only to have the water drawn from the supply controlled by the plaintiff and to have it pass through the pipes in which it was customarily conducted to the premises. Under the term 'appurtenances' there could not be implied an agreement on the part of the plaintiff to keep in repair the water system or the pipes leading to the leased premises. Such an agreement would necessarily become an added term of the contract itself; for it would guarantee something to the defendant which was not embraced within the general term 'appurtenances' as contained in the lease. It is not alleged in the amended answer that the plaintiff by any affirmative act prevented the water from flowing from her water system to and through the pipes leading to the leased premises. It is alleged that the plaintiff neglected to repair the pipes and water system when they became in disrepair. The appurtenant right to the water would give to the lessee authority to go upon the premises of the plaintiff, if need be, to make any repairs necessary to secure a continuation in the supply of water, but it would not cast upon the lessor the obligation to make such repairs or require of him that he see to it that the leased premises were kept supplied with water. Such an obligation cannot be imported into the terms of the written agreement through any proper or reasonable interpretation of the word 'appurtenances.' The amended answer, therefore, did not state facts sufficient to show a valid cause for abandoning the lease and vacating the premises, and the demurrer thereto was properly sustained. Plaintiff, however, has secured a judgment to which she is not entitled, because of the fact that her complaint is insufficient for the reasons first stated.

"The judgment is reversed."

We are content to adopt the foregoing opinion as a state-

ment of our own views of the case. It may be well, however, to briefly add to it a notice of some contentions which have been more elaborately advanced since the transfer of the cause to this court.

A reading of the complaint indicates that it was framed on the theory that the repudiation of the lease by the lessee operated at once to mature all the rent reserved in the lease and to enable the lessor to recover, not only the installments already accrued, but those to accrue in the future. This contention has been virtually abandoned by the counsel for respondent, although it appears to be still advanced by counsel appearing as *amicus curiæ.* But the proposition cannot be successfully maintained. It finds no support in the authorities with the exception of a few cases decided in Louisiana, a jurisdiction which is largely governed by the doctrines of the civil law. The general common-law rule is that rent, as such, is not payable until it falls due under the lease (1 Underhill on Landlord & Tenant, sec. 333) and this rule is not altered by the fact that the tenant has abandoned the premises and notified the landlord that he will repudiate the lease (*Nicholas* v. *Sift,* 118 Ga. 922, [45 S. E. 708]). Viewing the action as one for rent, it is not distinguishable, in principle, from *Tatum* v. *Ackerman,* 141 Cal. 357, [113 Am. St. Rep. 276, 7 Ann. Cas. 541, 3 L. R. A. (N. S.) 908, 83 Pac. 151].)

But it is argued that the plaintiff had the right to recover on the doctrine of "anticipatory breach" (*Alderson* v. *Houston,* 154, Cal. 1, [96 Pac. 884]) ; that is to say, that the defendant's repudiation of the obligations of his lease gave the plaintiff the right to treat the entire contract as broken, and to recover at once the damage sustained by such breach. But in an action to recover for such breach, the measure of damage would be, not the total rent reserved, but the difference between the rent to accrue and the value of the remaining portion of the term. (See cases cited in the foregoing opinion of James, J.) The complaint does not aver that plaintiff has sustained any damage by the defendant's repudiation, nor does it state any facts from which the amount of such damage may be inferred. It avers merely the non-payment for two months, and the repudiation, and then asks judgment for six hundred dollars. There is no allegation that the premises could not have been rented, during the rest of the term, for an amount equal to

the rent agreed to be paid by the defendant. The respondent seeks to overcome the want of averments showing the extent of damage sustained by citing a passage in *Alderson* v. *Houston*, 154 Cal. 1, [96 Pac. 884], where the court declared that the repudiation of a contract made out a *prima facie* case of liability on the part of the defendant for the entire sum which he had agreed to pay, and threw upon him the burden of showing that the plaintiff could have reduced the damage. *Alderson* v. *Houston* was a case of an agent wrongfully discharged and thus prevented from performing the contract on his part. The opinion expressly pointed out that the repudiation of a contract will not be deemed a prevention of performance where the obligations repudiated or unfulfilled by the defendant are not conditions precedent to performance by the plaintiff. The lease here in question did not bind the lessor by any covenants which were conditional upon the performance by the lessee of his obligations. If, therefore, the lessor sought to hold the lessee for the damage occasioned by an unauthorized repudiation of the lease, she was bound to allege and prove the amount of such damage.

The respondent makes the further attempt to meet the want of an allegation of damage by referring to *Riser* v. *Walton*, 78 Cal. 490, [21 Pac. 362], where the court used language to the effect that where a breach of an obligation is alleged, a prayer for damages in a certain sum may be treated as equivalent to an averment that plaintiff has suffered damage in that sum. But it appears that, in that case, the trial had proceeded upon the theory that the amount of damage was properly in issue, and the affirmance was rested, at least in part, on that ground. In the later case of *Lehnhardt* v. *Jennings*, 119 Cal. 192, [48 Pac. 56, 51 Pac. 195], the court held adversely to the claim that the prayer of the complaint was necessarily conclusive of the question of jurisdiction regardless of the averments on which such prayer was founded. However, even if we assume that *Riser* v. *Walton* decides that a prayer for judgment, in an action for damages, will supply the want of allegations showing the extent of the damage, the rule contended for could not be applied here. In *Riser* v. *Walton* the complaint showed upon its face that the sole cause of action relied upon was one for damages for deceit. In this case, as we have already suggested, the complaint was drawn in the belief that the facts al-

leged entitled the plaintiff to recover immediately the rent for the entire term, and the plaintiff undertook to set forth a demand for such rent. That this is the true interpretation of the pleading is confirmed by the language of the briefs first filed by the respective parties. There was nothing to indicate that damages for breach of an entire contract were claimed. In such a case, a court would not be warranted in saying that an allegation that plaintiff had suffered damage in the sum of six hundred dollars was to be implied from the mere fact that judgment in this amount had been asked.

On the other point, that of the defense attempted to be set up by the answer, little need be added to the argument contained in the opinion above quoted. The averments of the answer show that the defendant does not claim a right to have water flow, unimpeded by any act of the plaintiff, but that he seeks to impose upon the plaintiff the affirmative burden of keeping the water system and conduits in repair. Such duty is not included within the reasonable interpretation of the word "appurtenances." (*Watkins* v. *Green,* 22 R. I. 34, [46 Atl. 38].) The introduction of parol evidence in support of the allegations of the answer would not, therefore, be in aid of the interpretation of the lease. It would result in showing, in violation of the parol evidence rule, that there was, beyond the terms embodied in the lease, an antecedent oral agreement binding the lessor to do something more than she had in her lease agreed to do. Or, stating it in another way, it would, instead of showing what the "appurtenances" were, show that the lessor had undertaken to relieve the lessee of the burden which (except to the extent of the provision of Civ. Code, sec. 1942), would rest upon him (*Van Every* v. *Ogg,* 59 Cal. 563; *Gately* v. *Campbell,* 124 Cal. 520, [57 Pac. 567]), of keeping in repair the agencies requisite to the enjoyment of the appurtenances.

The judgment is reversed, with directions to the trial court to dismiss the action.

Shaw, J., Angellotti, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.