272 P.2d 173

**BELANGER et al. v. RICE.**

No. 8125.

Supreme Court of Utah.

July 2, 1954.

Benjamin Spence, Salt Lake City, for appellants.

O. H. Matthews, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Defendant, under a written lease, subleased a small ten-stool restaurant and coffee shop from plaintiffs for a period from March 17, 1952, to March 17, 1953, with rent of $75 payable monthly. Plaintiffs held the premises under a written lease from William Yeiter, who also owned a residence to the rear of the restaurant. Yeiter, during the time that he occupied the residence, furnished hot water to the restaurant from facilities in the house. On May 27, 1952, Rice rented the house from Yeiter and moved into it. The following November, Rice informed plaintiffs that because of his wife's ill health he would be unable to continue the operation of the restaurant and on December 1, 1952, he delivered the keys to Plaintiff Jocelyn, paying $37.50 for the rental value of the place from November 17th to November 30th. Plaintiffs advertised and obtained a tenant on December 8th, but this tenant remained only until December 28th because there was no hot water in the refreshment bar when Rice, then living in the house, refused to furnish it.

Plaintiffs instituted suit on December 13th in the Small Claims Court for rent for the period of December 1st to December 8th, and defendant settled with plaintiffs on December 19th for the amount of $15 rent and $5.50 as the cost of advertising to secure a new tenant.

After the premises were vacated by Jones, the tenant who remained in possession from December 8th to December 28th, plaintiffs brought suit to recover on their lease with defendant and recovered a judgment in the City Court for $202.50, as rent due from December 28th to the date of expiration of the lease, March 17, 1953. On appeal to the District Court, a judgment of no cause of action was entered, the court finding that the lease was surrendered, rather than abandoned, by the defendant.

The question raised on appeal here is whether facts surrounding the final transactions between the plaintiffs and defend-

252

ant will sustain the trial court's finding of surrender, which would cut off rights of both parties under the lease.

A surrender may take place where there is an express agreement of the parties or by operation of law. There is no evidence of an express agreement, and hence we must examine those elements which might give rise to a surrender by operation of law. As stated in 32 Am.Jur., Landlord and Tenant, Sec. 905:

> "A surrender of a lease by operation of law results from acts which imply mutual consent independent of the expressed intention of the parties that their acts shall have that effect; it is by way of estoppel. However, the intention of the landlord to accept the tenant's surrender of the premises is important on the question of surrender by operation of law, and a surrender will not be implied against the intent of the parties, as manifested by their acts; * * *."

In the case of Willis v. Kronendonk, 58 Utah 592, 200 P. 1025, 18 A.L.R. 947, an acceptance of possession after relinquishment by the tenant following a conversation in which the tenant stated that he could not "make it" if the rent were not reduced, which the landlord refused to do, and a reletting of the premises were held to be sufficient to establish surrender and acceptance. However, all the facts must be considered inasmuch as the accept-

ance of the keys might well be merely in order to protect the property and the reletting of the premises might equally logically be for the purpose of mitigating damages in a suit upon the lease.

In the present case, plaintiff Belanger testified:

> "Well, on November 17th, just prior to that, when his rent was due, he told me they had to move out, on account of his wife's illness. She was operating it. And that was okeh with me, providing they could find someone to take over the place. So, I asked them if they wouldn't advertise, to help me find somebody for the place, and Mrs. Rice replied that she had done enough advertising, she wasn't going to advertise any more. About a week or ten days after that I asked him to stay on about ten days more, and they wouldn't do it."

If, indeed, this was not an unconditional acceptance of the surrender on November 17th, the condition of acceptance was fulfilled after plaintiffs obtained a new tenant and received payment of the advertising costs from defendant. Further, in accepting payment for the period of time from December 1st to December 8th and the advertising fee, Mrs. Belanger, whose status as an agent for plaintiffs has not been attacked, gave a receipt on which she wrote "in full." These facts, taken as a whole, are such as to support the lower

court's finding that the plaintiffs accepted surrender of the lease.

■ It is fundamental that where a tenant surrenders and the landlord accepts the premises during the term of the lease, the landlord cannot recover rent not due and payable at the time of the surrender. Willis v. Kronendonk, supra; Roth v. Jackson, 150 Okl. 145, 299 P. 204; Boswell v. Merrill, 121 Cal.App. 476, 9 P.2d 341.

Plaintiffs claim nothing more for their evidence concerning defendant's refusal to furnish hot water to the new tenant than that it shows that, through his fault they were unable to mitigate damages. Whether or not defendant was under a legal duty to furnish this water must depend on agreements not concerned in the present dispute and cannot affect the result of the surrender and acceptance here set forth.

Judgment affirmed. Costs to respondent.

HENRIOD, WADE and WORTHEN, JJ., concur.

CROCKETT, Justice.

I dissent. The lease being admitted, the burden was upon the defendant to prove by a preponderance of evidence surrender of the premises and cancellation of the lease by *mutual* agreement. It is easy enough to divine that the defendant both intended and ardently desired that cancellation be effected. But the obstacle which defendant must overcome, is to prove that the plaintiff manifested such intent.

It does not appear to me that the evidence will support a finding that he did so.

The prevailing opinion correctly states that " 'a surrender [cancellation] will not be implied against the intent of the parties, as manifested by their acts'."

The facts referred to in the main opinion are the strongest evidence to be found that plaintiff agreed to a cancellation. That evidence not only falls short of affirmatively showing that he agreed to release defendant from their contract, but is entirely consistent with his insistence upon his rights under the lease. It argues only that he wanted to be cooperative in mitigating damages. His response to the statement that defendant wanted to move out: " 'that was okeh with me, *providing they could find someone to take over the place*'." (Emphasis added.) accords with such purpose.

The same can be said of the payment of the November rent, and the giving of the receipt marked "in full". It was but a strictly proper business transaction; a payment of the rent then due and an acknowledgment that it was paid in full. It is not at all inconsistent with plaintiff's position that he was entitled to rely on the terms of his lease. No evidence was referred to or offered making any reference to release or cancellation of future rent that might accrue under the lease; nor can any such conclusion be inferred from the receipt itself.

When a sub-tenant was procured which might have reduced plaintiff's damages, de-

254

fendant was at least partly responsible for the failure of this arrangement because of his refusal to cooperate in furnishing hot water for the tenant. He knew this was the only possible source of hot water for the lunch counter. Even though there was not a specific covenant that he would so cooperate, it would have been cheaper than to pay the entire rent. This latter matter is not controlling but it bears upon the unreasonableness of the defendant's position in refusing to abide by the terms of his lease, and failing to extend reasonable cooperation to the plaintiff in renting the premises to protect the plaintiff from loss.

The burden of proving that the plaintiff agreed to cancellation and release from the terms of the lease cannot be met by simply proving facts equally consistent with continuance of the obligations of the lease. The evidence must be such that reasonable minds could find either directly or from fair inference that its greater weight preponderates toward proving that he so agreed. [1]

I cannot agree with the statement that "where a tenant surrenders and the landlord accepts the premises during the term of the lease, the landlord cannot recover rent not due and payable at the time of the surrender." This must be coupled with circumstances indicating an intent on the part of the landlord that he is releasing the obligations under the lease as well as accepting the property; otherwise his acceptance of surrendered premises might simply be in accord with his duty to safeguard the premises and to mitigate damages if possible, as I think the evidence shows here.

I therefore conclude that the judgment should be reversed.

---

1. See Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986.